[906 NYS2d 23]

GARVEY RICH, Respondent, v EAST 10TH STREET ASSOCIATES LLC, Formerly Known as EAST 10TH STREET ASSOCIATES, et al., Defendants, and 256 EAST 10TH STREET NY, LLC, Appellant.

CHRISTOPHER SCOTT, Respondent, v ROCKAWAY PRATT, LLC, Appellant.

First Department, July 27, 2010

## APPEARANCES OF COUNSEL

*Sidrane & Schwartz-Sidrane, LLP*, Hewlett (*Steven D. Sidrane* of counsel), for appellants.

*Christopher D. Lamb, MFY Legal Services, Inc.*, New York City (*Kristin M. McNamara* of counsel), for Garvey Rich, respondent.

*Steven Banks, The Legal Aid Society*, Brooklyn (*Patrick Langhenry* of counsel), for Christopher Scott, respondent.

*Borah, Goldstein, Altschuler, Nahins & Goidel, P.C.*, New York City (*Paul N. Gruber, David Cabrera* and *Marnie R. Kudon* of counsel), amicus curiae.

## OPINION OF THE COURT

Abdus-Salaam, J.

In these actions for rent overcharges paid under leases subject to the Rent Stabilization Law of 1969, the motion courts held that rent reduction orders issued prior to the four-year statute of limitations of CPLR 213-a, and remaining in effect during the limitations period, should be used to determine the base rent for purposes of calculating the amount of the overcharges. This was error.

The proper legal regulated rent for purposes of determining an overcharge is deemed to be the rent charged on the base date, plus any subsequent lawful increases or adjustments (Rent Stabilization Code [9 NYCRR] § 2526.1 [a] [3] [i]). The base date in these cases is four years before the filing of the over-charge complaint (9 NYCRR 2520.6 [f]).

The Legislature clearly recognized that the rent actually charged on the base date may not be the legal regulated rent, but nonetheless imposed a four-year limitations period that deemed the base rent to be the legal rent. CPLR 213-a, which tracks the language of the Rent Stabilization Law (RSL) (Administrative Code of City of NY § 26-516 [a] [2]), precludes, with respect to actions on a residential rent overcharge, "examination of the rental history of the housing accommodation prior to the four-year period immediately preceding the commencement of the action." Additionally, "the legal regulated rent for purposes of determining an overcharge, shall be the rent indicated in the annual registration statement filed four years prior to the most recent registration statement . . . plus in each case any subsequent lawful increases and adjustments," and where the amount of rent set forth in that annual rent registration statement "is not challenged within four years of its filing, neither such rent nor service of any registration shall be subject to challenge at any time thereafter" (RSL § 26-516 [a] [i]).

By applying the rent that should have been charged on the base date pursuant to the rent reduction order instead of the actual base date rent, the motion courts ran afoul of the foregoing statutory provisions. The legislative scheme forecloses such an analysis, "even where the prior rental history clearly indicates that an unauthorized rent increase had been imposed" (*Matter of Hatanaka v Lynch*, 304 AD2d 325, 326 [2003]). While it would have been appropriate, in calculating the overcharge, to take notice of the rent reduction order and freeze the legal base rent during the period when the rent reduction order was extant (*see e.g. Matter of Cintron v Calogero*, 59 AD3d 345 [2009]), consideration of the rent reduction order issued before

the base date for the purpose of readjusting the legal base rent is not permitted.

The dissent's citation to this Court's decision in *Crimmins v Handler & Co.* (249 AD2d 89 [1998]) is misplaced because the holding there did not involve the issue before us. *Crimmins* simply construed the statutory language of CPLR 213-a to mean that an action for an overcharge must be brought within four years of the first month for which damages are sought to be recovered. In other words, damages can only be recovered for the four-year period preceding the commencement of the action, and not, as argued by the defendants in that case, that an overcharge claim is barred where the overcharge has extended for a period in excess of four years. *Crimmins* did not address the issue here, which is whether the rental history of an apartment prior to the four-year period preceding the filing of the overcharge complaint can be used to calculate the rent overcharge. Therefore, notwithstanding the Second Department's citing of *Crimmins* in *Matter of Condo Units v New York State Div. of Hous. & Community Renewal* (4 AD3d 424 [2004], *lv denied* 5 NY3d 705 [2005]) to support its conclusion that the DHCR was not precluded from examining the rent history beyond the four-year period preceding the complaint in order to calculate the overcharge, this Court's decision in *Crimmins* does not stand for that proposition.

Nor does *Thornton v Baron* (5 NY3d 175 [2005]) support the dissent's position that the rent reduction order, issued years prior to the four-year period preceding the filing of the complaint, should be used to determine the base date legal rent for purposes of calculating the overcharge. *Thornton* did not involve a rent reduction order, but the fraudulent creation of an illusory tenancy for the purpose of removing an apartment from the protection of the Rent Stabilization Law. The lease was void at its inception, and the rent registration statement filed four years prior to the complaint was a nullity. In this case, there has been neither a finding of fraud nor a declaration that the lease was void and the rent registration a nullity. Moreover, and most significantly, even where the owner's actions in *Thornton* were described as fraudulent, willful and egregious, in establishing the legal regulated rent of the apartment, the Court of Appeals affirmed our holding that a default formula should be used to determine the legal rent *as of four years prior to commencement of the action*, rather than the eight years before commencement, when the illusory tenancy was first created.

We had noted in that case that CPLR 213-a "contains no provision for a toll while a dwelling unit is not subject to rent stabilization, either because it is temporarily exempt or because an unlawful rent is being charged" (4 AD3d 258, 259 [2004]). Nor is there any provision for a toll where a rent reduction order has been violated and remains extant. The dissent argues that calculating the rent overcharge without applying the rent reduction order to reset the proper legal base date rent rewards the owner for flouting the rent reduction order. However, this is similar to the position taken by the dissenters in *Thornton* (*id.* at 260), and is no more persuasive in this context, where the owner's conduct is not fraudulent.

Furthermore, while the Court of Appeals noted in *Thornton* that this was "not a situation where an order issued prior to the limitations period imposed a continuing obligation on a landlord to reduce rent, such that the statute of limitations would be no defense to an action based on a breach of that duty occurring within the limitations period" (5 NY3d at 180), we do not read this to mean that the rent reduction order should be used to calculate the overcharge by reestablishing a new base rent.

The concepts of a limitations period and calculation of a rent overcharge are distinctly different. While we have held in *Crimmins*, consistent with the above-quoted language of *Thornton*, that the statute of limitations does not bar an overcharge complaint when a rent reduction order was issued prior to the four-year limitations period, we have also held that in calculating a rent overcharge, it was proper for DHCR to take notice of the rent reduction order in effect at the relevant time by freezing the base date rent, but not by reestablishing the base date rent pursuant to the rent reduction order (*see Matter of 462 Amsterdam, LLC v New York State Div. of Hous. & Community Renewal*, 61 AD3d 553 [2009]; *Cintron v Calogero*, 59 AD3d at 346). This is premised on the reasoning that a rent reduction order, although a continuing obligation, cannot be applied to reestablish the base date rent, as such an application would run afoul of RSL § 26-516 (a) (i).

Contrary to the suggestion of the dissent, we are not, by this holding, contravening the well-settled policy that an administrative order is effectual until vacated by the agency or set aside upon judicial review. Rather, we conclude that a rent reduction order issued beyond the limitations period but still in effect during that period may be considered in overcharge proceedings

only insofar as that order is a continuing obligation, freezing the rent as of the base date but not reestablishing the base date rent, because applying the rent reduction order to readjust the base date rent would conflict with the express proscriptions set forth in CPLR 213-a and RSL § 26-516 (a) (i).

Accordingly, the order of the Supreme Court, New York County (Michael D. Stallman, J.), entered March 3, 2009, which denied defendant 256 East 10th Street NY's motion for summary judgment dismissing the complaint, upon the finding, inter alia, that the legal base rent for purposes of calculating the rent overcharge is the rent charged on April 1, 1993, should be modified, on the law, to vacate that finding and substitute therefor a finding that the base rent is the rent charged four years before the filing of the overcharge complaint, and otherwise affirmed, without costs. The order, same court (O. Peter Sherwood, J.), entered July 23, 2009, which, to the extent appealed from, denied defendant Rockaway Pratt's motion for summary judgment dismissing the complaint, upon the finding, inter alia, that the legal base rent for purposes of calculating the rent overcharge is the rent charged on August 1, 1982, should be modified, on the law, to vacate that finding and substitute therefor a finding that the base rent is the rent charged four years before the filing of the overcharge complaint, and otherwise affirmed, without costs.

Tom, J.P. (dissenting). These actions, consolidated for disposition, seek recovery of rent overcharges in the amount paid under a lease subject to the Rent Stabilization Law of 1969. While the actions are governed by the four-year statute of limitations of CPLR 213-a, the issue to be decided is whether the statutory proscription against "examination of the rental history of the housing accommodation prior to the four-year period immediately preceding the commencement of the action" encompasses a rent reduction order that was issued prior to the limitations period.

Resolution of these matters turns upon the operative distinction between examination of the rental history of the rent-stabilized accommodation, which is subject to the four-year statute of limitations, and adherence to the terms of an order, which is not. Though in each instance the rent reduction order was issued prior to the four-year period preceding the filing of the rent-overcharge complaint, any such order imposes a continuing obligation upon the landlord to limit the amount of rent charged

under the lease that does not abate with the mere passage of time.

In both of these matters, the parties have stipulated to the essential facts. In *Rich*, plaintiff took occupancy of his apartment in March 1992 under a lease reflecting a monthly rent of $690. In 1994, he and various other tenants filed an administrative complaint against the former building owner with the Division of Housing and Community Renewal (DHCR), alleging a diminution in building services. DHCR found in favor of the tenants, and by order issued December 5, 1994, reduced the legal regulated rent, commencing January 1, 1994, "to the level in effect prior to the most recent guidelines increase for the tenant's lease which commenced before the effective date of this Order." The order also provided that "no rent increase may be collected after the effective date of this rent reduction Order, until a Rent Restoration Order has been issued." It is undisputed that DHCR has never issued a rent restoration order, that the former owner never refunded amounts collected in excess of the reduced rent, that the former owner continued charging and collecting lease renewal rent increases, and that plaintiff paid all rent through and including that due for September 2007 to the former owner. The present owner, defendant 256 East 10th Street NY, which acquired the premises under a deed dated September 6, 2007, immediately applied for a rent restoration order, which DHCR denied in January 2008.

The amended complaint alleged that the tenant who occupied the apartment immediately prior to the commencement of plaintiff's lease had paid a monthly rent of $409.12, and allowing for a 9% vacancy increase, the initial rent should have been $445.95, not the $690 actually paid by Rich upon commencement of his tenancy. It is further alleged that Rich never received notice of DHCR's December 1994 rent reduction order, and that he never would have discovered the existence of that order but for the action of the landlord in applying for rent restoration. Rich seeks to recover the amount he was overcharged for the four-year period immediately preceding the filing of the complaint, to the extent that the rent he paid exceeded the amount frozen by DHCR's 1994 rent reduction order.

The landlord answered and moved for summary dismissal, contending that the base rent should be determined by the amount contained in the rent registration statement in effect four years prior to the filing of the complaint, which the parties stipulate is $924.33. The landlord relied on the four-year stat-

ute of limitations of CPLR 213-a, asserting that it limited the effect of DHCR's rent reduction order to freezing the rent at the amount of the $924.33 base rent.[1] The answer averred that the landlord has refunded any amount due plaintiff in excess of such base rent, together with interest at the statutory rate.

In opposition, Rich argued that the statute of limitations should be waived based on his allegation that the former owner, by tampering with his mail, fraudulently concealed the issuance of the DHCR rent reduction order freezing the rent at "the level in effect prior to the most recent guidelines increase for the tenant's lease." Rich thus contended that he was entitled to recover all rent paid in excess of $690 a month, which he claimed was the guideline in effect as of the issuance of the rent reduction order.

Supreme Court denied the landlord's motion. The court noted that the duty imposed on a landlord by a rent reduction order is a continuing one (22 Misc 3d 1126[A], 2009 NY Slip Op 50299[U], *6, citing *Matter of Condo Units v New York State Div. of Hous. & Community Renewal*, 4 AD3d 424 [2004], *lv denied* 5 NY3d 705 [2005]), concluding that the Legislature did not intend the statute of limitations "to provide an escape route for a landlord seeking to evade the terms of orders for required repairs or services to tenants." The court held that the order incorporating the rent in effect prior to the most recent guidelines increase was not subject to the statute of limitations. However, the court observed that the rent level frozen by DHCR's order was not the $690 provided in plaintiff's first lease, which expired March 31, 1993, but rather the rent in effect in the fall of 1993, during the first renewal lease. Because the renewal lease was not contained in the record, the court ruled that determination of this amount must await trial.

In *Scott*, plaintiff took occupancy in January 2004 under a lease commencing January 15, 2004 and providing for a monthly rent of $925. The apartment, however, remained subject to an expulsion order issued by the Conciliation and Appeals Board,

---

1. CPLR 213-a provides:
   "An action on a residential rent overcharge shall be commenced within four years of the first overcharge alleged and no determination of an overcharge and no award or calculation of an award of the amount of any overcharge may be based upon an overcharge having occurred more than four years before the action is commenced. This section shall preclude examination of the rental history of the housing accommodation prior to the four-year period immediately preceding the commencement of the action."

predecessor agency to DHCR. The expulsion order found a reduction in services at the subject premises and directed the then owner to reduce the rent to the level in effect prior to the most recent guidelines increase, retroactive to August 1, 1982. A December 1983 order of the New York City Department of Housing Preservation and Development had set the legal regulated rent for the premises at $179.03 a month. In May 1994, the application of a prior owner for an order restoring the rent was denied, and in September 2008, defendant's application for a rent restoration order was likewise denied.

Scott filed the summons with notice on January 11, 2008. The verified complaint alleged that defendant Rockaway Pratt was liable for rent overcharges for the four years preceding the commencement of the action representing the amount in excess of the $179.03 at which the monthly rent was frozen.

Rockaway answered and moved for summary judgment dismissing the complaint, asserting that the legal rent must be determined from the base date, January 11, 2004, four years prior to the filing of the summons; that on the base date, the apartment was vacant; that the rent reserved in the first lease was $925; and that the legal regulated rent for the apartment was thus $925 (citing Rent Stabilization Code [9 NYCRR] § 2526.1 [a] [3] [iii]).

Supreme Court held that the rent order setting the legal regulated rent at $179.03 "imposed a continuing obligation on the landlord to make repairs and to provide required services," which was "reaffirmed" when DHCR denied Rockaway's application for restoration of rent in September 2008, "within the limitations period" (24 Misc 3d 1231[A], 2009 NY Slip Op 51684[U], *5). Because the total amount of rent credits received by Scott was unclear from the record, the court concluded that a hearing was required to calculate the total rent overcharge.

In both appeals, defendant owners rely on CPLR 213-a and the Rent Stabilization Law to obviate any consideration of the respective rent reduction orders in calculating the amount by which plaintiff tenants were overcharged. As pertinent to the matters at bar, Rent Stabilization Law (RSL) (Administrative Code of City of NY) § 26-516 (a) (i) provides that "the legal regulated rent for purposes of determining an overcharge, shall be the rent indicated in the annual registration statement filed four years prior to the most recent registration statement."

Tenants contend that the four-year statute of limitations does not relieve owners from their obligation to comply with the re-

spective rent reduction orders. In any event, they argue, the Legislature did not intend such orders to comprise part of the rental history of an apartment.

The primary purpose of the Rent Stabilization Law was to "ameliorate the dislocations and risk of widespread lack of suitable dwellings" (*Manocherian v Lenox Hill Hosp.*, 84 NY2d 385, 395 [1994], *cert denied* 514 US 1109 [1995]). To further this policy goal, DHCR was empowered to issue rent reduction orders to compel owners to provide essential services (RSL § 26-514) so as to preserve and maintain the housing stock in New York City (*see Jenkins v Fieldbridge Assoc., LLC*, 65 AD3d 169, 173 [2009], *appeal dismissed* 13 NY3d 855 [2009]). Under section 26-514, if DHCR determines, upon application of a tenant, that a landlord has failed to maintain required services, the agency may issue a rent reduction order and bar the owner from applying for or collecting future rent increases until services have been restored. DHCR's Operational Bulletin 95-1 (August 21, 1994) sets forth the agency's general policy regarding rent reduction orders, and prohibits the collection of any other rent increases, after the effective date of a rent reduction order, until the issuance of a rent restoration order.

By calculating the rent overcharge without consideration of the rent reduction order issued prior to the four-year limitations period, the majority would, in effect, frustrate a significant policy goal of the Rent Stabilization Law and encourage unscrupulous property owners to disregard compliance orders that would, by application of the majority's methodology, have a four-year expiration date. Therefore, by allowing the unlawful rents contained in the registration statements filed by owners to establish the lawful regulated rents for tenants' premises, the majority would reward owners for flouting the respective rent reduction orders issued by DHCR and its predecessor agency. As stated by the Court of Appeals,

> "a landlord whose fraud remains undetected for four years—however willful or egregious the violation—would, simply by virtue of having filed a registration statement, transform an illegal rent into a lawful assessment that would form the basis for all future rent increases . . . That surely was not the intention of the Legislature when it enacted the RRRA [Rent Regulation Reform Act]. Its purpose was to alleviate the burden on honest landlords to retain rent records indefinitely, not to immunize

dishonest ones from compliance with the law" (*Thornton v Baron*, 5 NY3d 175, 181 [2005] [citation omitted]).

The four-year statute of limitations applicable to rent overcharge calculations was enacted as part of the Omnibus Housing Act of 1983 (L 1983, ch 403, §§ 14, 35) and was intended to ease the burden on owners by limiting the number of years rental records must be preserved to respond to rent overcharge complaints (*see Matter of Gilman v New York State Div. of Hous. & Community Renewal*, 99 NY2d 144, 149 [2002]). Previously, owners had been required to retain and produce, on demand, all leases in effect on May 31, 1968 or thereafter (*see Matter of Lavanant v State Div. of Hous. & Community Renewal*, 148 AD2d 185, 190-191 [1989]). The requirement for rent registration (L 1983, ch 403, § 5) and the four-year limitations period were intended to complement the new limit on record maintenance, effective April 1, 1984, as codified in RSL § 26-516 (g)[2] (*see Matter of Ador Realty, LLC v Division of Hous. & Community Renewal*, 25 AD3d 128, 135 [2005]). Clearly, the statute was not intended to diminish DHCR's power to enforce the owners' obligation to provide essential services to housing accommodations in New York City.

The RRRA (L 1997, ch 116) "clarified and reinforced the four-year statute of limitations in rent overcharge claims and limited 'examination of the rental history of the housing accommodation prior to the four-year period proceeding the filing of a[n overcharge] complaint' " (*Gilman*, 99 NY2d at 149, quoting RRRA § 33, which amended RSL § 26-516 [a] [2]). Section 33 of the 1997 enactment further amended RSL § 26-516 (a) (i) to read as follows:

"Where the amount of rent set forth in the annual rent registration statement filed four years prior to the most recent registration statement is not challenged within four years of its filing, neither such rent nor service of any registration shall be subject to challenge at any time thereafter" (*see Matter of Muller v New York State Div. of Hous. & Community*

---

**2.** "Any owner who has duly registered a housing accommodation pursuant to section 26-517 of this chapter shall not be required to maintain or produce any records relating to rentals of such accommodation for more than four years prior to the most recent registration or annual statement for such accommodation."

*Renewal*, 263 AD2d 296, 303 [2000], *lv denied* 95 NY2d 763 [2000])[3].

The statute of limitations is equally applicable to an adjustment in the amount of the legal regulated rent or to recovery of a rent overcharge (*Gilman*, 99 NY2d at 149).

This Court has held that a tenant may recover the amount paid to the owner in excess of the rent established by a rent reduction order even though the order was issued, and the first overcharge occurred, prior to the four-year limitations period (*Crimmins v Handler & Co.*, 249 AD2d 89, 91 [1998]; *cf. Matter of Brinckerhoff v New York State Div. of Hous. & Community Renewal*, 275 AD2d 622 [2000], *appeal dismissed* 96 NY2d 729 [2001], *lv denied* 96 NY2d 712 [2001] [statute of limitations commences running with first overcharge]). This position has been adopted by the Second Department in *Condo Units* (4 AD3d at 425): "[W]here a duty imposed prior to a limitations period is a continuing one, the statute of limitations is not a defense to actions based on breaches of that duty occurring within the limitations period," the Court concluding that "DHCR properly considered the rent reduction order issued prior to the four-year limitations period, but still in effect at the time of the overcharge complaint, since it imposed a continuing obligation on the landlord to reduce rent" (*id.*).

The Court of Appeals arrived at the same conclusion in *Thornton* (5 NY3d 175 [2005], *affg* 4 AD3d 258 [2004]), where a new legal regulated rent was required to be established because the premises was occupied under an illusory tenancy that we had earlier declared invalid. We held that since the tenants commenced their action over eight years after the last lawful rent had been paid, use of the rental history was precluded by CPLR 213-a, and the rent had to be determined by means of a default formula employed by DHCR (4 AD3d at 259-260). In endorsing the use of this methodology, the Court of Appeals emphasized that this was "not a situation where an order issued prior to the limitations period imposed a continuing obligation on a landlord to reduce rent, such that the statute of limitations would be no defense to an action based on a breach of that duty occurring within the limitations period" (5 NY3d at 180).

As a further consideration, nothing has been brought to this Court's attention to suggest that the Legislature, by restricting

---

**3.** The amended portion of the Rent Stabilization Law was incorrectly referred to in *Muller* as located in section 26-516 (a) (*ii*).

the period during which a rent overcharge can be recovered, intended to abrogate the well-settled policy that an administrative order remains in effect until vacated by the agency that issued it or set aside upon judicial review (*see e.g. 520 E. 81st St. Assoc. v Lenox Hill Hosp.*, 38 NY2d 525 [1976] [once court decides that the Rent Stabilization Law is applicable, issues arising under the statute require administrative determination until that remedy is exhausted]; *Ament v Cohen*, 16 AD2d 824 [1962] [Rent Administrator's order setting rent is conclusive and not subject to collateral attack]; *Parisi v Hines*, 131 Misc 2d 582, 584 [1986], *affd for reasons stated below* 134 Misc 2d 20 [App Term 1986], *affd* 134 AD2d 972 [1987], *lv dismissed* 71 NY2d 928 [1988] [DHCR order is binding upon court, subject only to CPLR article 78 review]).

Accordingly, the orders should be affirmed.

FRIEDMAN, SWEENY and NARDELLI, JJ., concur with ABDUS-SALAAM, J.; TOM, J.P., dissents in a separate opinion.

Order, Supreme Court, New York County, entered March 3, 2009, modified, on the law, to vacate the finding and substitute therefor a finding that the base rent is the rent charged four years before the filing of the overcharge complaint, and otherwise affirmed, without costs.

Order, same court, entered July 23, 2009, modified, on the law, to vacate the finding and substitute therefor a finding that the base rent is the rent charged four years before the filing of the overcharge complaint, and otherwise affirmed, without costs.