(March 8, 2011)

A. DANZA & SONS, LLC, Respondent, v CROSSROADS EQUESTRIAN CENTER, LTD., Appellant, et al., Defendant. [918 NYS2d 189]—

The Supreme Court's determination awarding the plaintiff the sum of $100,000 for unpaid stall and paddock rental fees for the period May 2003 through October 2005 and, in effect, dismissing the first counterclaim of the defendant Crossroads Equestrian Center, Ltd. (hereinafter Crossroads), to recover for the overpayment of rent from January 2000 through May 2006 was not warranted by the facts. "As this case was tried to the court, without a jury, this Court's power to review the evidence is as broad as that of the trial court, with appropriate regard given to the decision of the trial judge who was in a position to assess the credibility of the witness[es]" (*779 E. N.Y. Ave. Assoc.,*

*LLC v Gurary,* 31 AD3d 627, 628 [2006]; *see Northern West-chester Professional Park Assoc. v Town of Bedford,* 60 NY2d 492, 499 [1983]). The Supreme Court determined that the numerical counts provided by the plaintiff's president, Anthony Danza, of the stalls rented by Crossroads were more reliable than the stall counts provided by the defendant Jan Golash, the president of Crossroads, because Danza physically counted the stalls at the time he issued his monthly invoices. However, only one of the invoices was admitted in evidence, and it is impossible to determine from that invoice how many stalls Crossroads was billed for. Danza testified that Crossroads started its tenancy in 1998 with 36 stalls and within a year occupied 40 stalls, and that the stall count remained at 40 for the duration of the tenancy. However, Danza later conceded that Crossroads sent some horses away during the year. While he testified that he would then correct the stall count, without the remainder of the invoices, it is impossible to determine how many stalls Crossroads was charged for each month.

On the other hand, Golash determined the stall counts for each month of the tenancy through Crossroads's billing records and her personal knowledge. Accordingly, we find that Golash's stall counts were more reliable. Indeed, the plaintiff relied upon Golash's stall counts for the months of August 2005, September 2005, and October 2005 in its posttrial memorandum.

Moreover, the Supreme Court erred in rejecting Crossroads's evidence, which consisted of Golash's stall counts based upon Crossroads's billing records and Golash's personal knowledge, a "ledger" created by Crossroads's accountant indicating amounts paid to the plaintiff based upon Crossroads's business records, Crossroads's income tax returns, and a summary created by Crossroads's attorney based upon information provided by Golash and Crossroads's accountant from Crossroads's business records.

Since the Supreme Court erred in calculating its award based upon the plaintiff's evidence, the award was not warranted by the facts. It is possible, however, to calculate the damages award based upon Crossroads's evidence. Using Golash's stall counts, Crossroads should have been billed the sum of $528,000 for stall fees and $12,000 for paddock fees, for a total of $540,000. Crossroads paid the plaintiff the sum of $577,960 during that period of time. Based upon Crossroads's evidence, Crossroads overpaid the plaintiff the sum of $37,960 during the period May 2003 through October 2005. Accordingly, the plaintiff was not entitled to any recovery, and the complaint should have been dismissed.

While the plaintiff sought to recover for amounts owed only between May 2003 and October 2005, in its first counterclaim Crossroads sought to recover overpayments made between January 2000 and May 2006. Accepting Crossroads's evidence, Crossroads established that it overpaid the plaintiff the sum of $46,355 from January 2000 through May 2006 (including the over-payment of $37,960). Accordingly, Crossroads should have been awarded the total sum of $46,355 on its first counterclaim.

The plaintiff's remaining contention is without merit. Mastro, J.P., Florio, Leventhal and Belen, JJ., concur.